IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Shanon Whaley,<br><br>Plaintiff,<br><br>v.<br><br>Amazon.com, Inc., Amazon.com Services, LLC, Amazon Logistics, Inc., Carcast Express, LLC Adam Yahia, Individually, and Primex Logistics, LLC,<br><br>Defendants. | CIVIL ACTION NO.: 2:24-cv-07371-DCN<br><br>**COMPLAINT**<br>(Jury Trial Demanded)<br><br>(Negligence; Negligent Entrustment; Negligent Hiring, Retention, Training, and Supervision; Vicarious Liability; Joint Venture; Joint Enterprise; and Loss of Consortium) |

Shanon Whaley, by and through her undersigned counsel and complaining of the Defendants above-named, jointly and severally, would allege and show unto this Honorable Court the following, upon information and belief:

**PARTIES, JURISDICTION AND VENUE**

1.      This case arises out of a tractor-trailer collision that caused serious and permanent injury and significant damages to Robert Whaley ("Mr. Whaley") on January 5, 2022 in Charleston County, South Carolina (hereinafter, "Subject Collision").

2.      At the time of the collision, Mr. Whaley was a citizen and resident of Dorchester County, South Carolina.

3.      At all times relevant hereto, Shanon Whaley ("Plaintiff") is the spouse of Mr. Whaley and brings this action pursuant to S.C. Code Ann. § 15-75-20 for the depravation of care, comfort, society, services and marital consortium of a kind and loving husband and father and further suffering from the loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

1

4. At the time of the Subject Collision, Defendant Amazon.com, Inc. ("Amazon.com") was, upon information and belief, and remains a corporation incorporated under the laws of the State of Delaware with its principal place of business in King County, Washington.

5. At the time of the Subject Collision, Defendant Amazon.com Services, LLC ("Amazon Services") was, upon information and belief, and remains a limited liability company formed under the laws of the State of Delaware with its principal place of business in King County, Washington.

6. Upon information and belief, Amazon Services is a wholly owned subsidiary of Amazon.com and a subsidiary, sister entity, or affiliate of Defendant Amazon Logistics, Inc.

7. Amazon Services operates the Amazon.com marketplace and relies on and advertises immediate delivery of products ordered by customers. To meet their customer service promises and delivery deadlines, Amazon Services has distribution, warehouse, and storage facilities throughout South Carolina and contracts with thousands of interstate and intrastate motor carrier trucking companies to position those goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers. Amazon Services was transacting substantial business in South Carolina on the date of the Subject Collision and is subject to the jurisdiction and venue of this Court.

8. At the time of the Subject Collision, Defendant Amazon Logistics, Inc. ("Amazon Logistics") was, upon information and belief, and remains a corporation incorporated under the laws of the State of Delaware with its principal place of business in King County, Washington.

9. At the time of the Subject Collision, Amazon Logistics was an active interstate Motor Carrier (USDOT# 2881058) registered with the Federal Motor Carrier Safety Administration.

10.    At all relevant times hereto, Amazon Logistics operated a trucking company engaged in interstate commerce, and regularly and systematically transacted, solicited, and conducted business in the State of South Carolina, including Charleston County.

11.    At all relevant times hereto, Amazon Logistics was a motor carrier pursuant to 49 C.F.R. Part 392.3 and 49 C.F.R. Part 395.1 and 49 C.F.R. Part 395.8.

12.    Upon information and belief, Amazon Logistics is a wholly owned subsidiary of Amazon.com and a subsidiary, sister entity, or affiliate of Amazon Services.

13.    Amazon Logistics is the transportation and logistics subsidiary of Amazon.com and is part of the world's largest online retailer that relies on and advertises immediate delivery of products ordered by customers. To meet their customer service promises and delivery deadlines, Amazon Logistics has or regularly arranges deliveries to distribution, warehouse, and storage facilities throughout South Carolina and contracts with thousands of interstate and intrastate motor carrier trucking companies to position Amazon goods in their distribution centers for rapid delivery and to then deliver those goods to its end customers. Amazon Logistics was transacting substantial business in South Carolina on the date of the Subject Collision and is subject to the jurisdiction and venue of this Court.

14.    Defendants Amazon.com, Amazon Services, and Amazon Logistics and their agents, representatives, contractors, subsidiaries, affiliates, and employees (hereinafter, collectively referred to as "the Amazon Defendants") were engaged in a joint venture for the promotion, sale, and delivery of products sold on Amazon.com, including sales and deliveries to South Carolina residents, and that involved the Subject Load being transported on the date of the Subject Collision.

15.    General personal jurisdiction over the Amazon Defendants is proper since the Amazon Defendants engaged in substantial business activity in South Carolina, directed activities at South Carolina, and maintain an enduring relationship with South Carolina, including without

limitation: being registered to do business in South Carolina; owning and/or leasing property in South Carolina; operating warehouses, fulfillment centers, and distribution centers in South Carolina, including a one-million square foot warehouse in West Columbia, South Carolina and another one-million square foot warehouse in Spartanburg, South Carolina; engaging in millions of sales and deliveries to South Carolina consumers; contracting with South Carolina-based motor carriers and truck drivers to deliver goods in other states; contracting for the transport and delivery of products it sells in South Carolina; utilizing tractor-trailers to deliver products it sells on the interstates, highways, and roadways in South Carolina; regularly engaging in the ultra-hazardous activity of arranging for the transportation of goods and packages in interstate and intrastate commerce over South Carolina roads to and for South Carolina residents and businesses; providing services to its customers using commercial transportation services in South Carolina that include transporting goods in interstate and intrastate commerce; and by otherwise conducting substantial, continuous and systematic business in the State of South Carolina on a daily basis. *See*: S.C. Code Ann. § 36-2-802.

16.     Specific personal jurisdiction over the Amazon Defendants is proper under the South Carolina Long Arm Statute and satisfies constitutional requirements as the Amazon Defendants, both directly and through their agents, committed tortious acts in South Carolina, including: contributing to the Subject Collision; causing injury to persons and property within South Carolina arising out of acts or omissions outside this state, including the hiring and/or retention of unfit, unqualified, unvetted, untrained, and/or dangerous drivers and trucking companies involved in commercial transportation on South Carolina roadways; breaches of duties owed for proper inspection, maintenance, and/or repair of transportation equipment and proper training and/or supervision of the same, as well as in the use, provision, and/or failure to maintain equipment involved in commercial transportation on South Carolina roadways; by improperly

qualifying and investigating Defendants Carcast Express, LLC, Primex Logistics LLC and Adam Yahia, which allowed Defendants Carcast Express, LLC, Primex Logistics LLC and Adam Yahia to drive for the Amazon Defendants despite a poor safety record; by failing to monitor the safety record and performance of Defendants Carcast Express, LLC, Primex Logistics LLC and Adam Yahia after they were initially approved to transport goods for the Amazon Defendants; and by continuing to use Defendants Carcast Express, LLC, Primex Logistics LLC and Adam Yahia despite their poor safety record and continuous violation of Amazon policies and procedures preventing double brokering and speeding, all of which causally contributed to the Subject Collision. *See*: S.C. Code Ann. § 36-2-803.

17.     At the time of the Subject Collision, Defendant Carcast Express, LLC ("Carcast Express") was, upon information and belief, a limited liability company formed under the laws of the State of Florida with its principal place of business in Duval County, Florida.At the time of the Subject Collision, Carcast Express was an active interstate Motor Carrier (USDOT# 2912029) registered with the Federal Motor Carrier Safety Administration.

18.     At all relevant times hereto, Carcast Express operated a trucking company engaged in interstate commerce, and regularly and systematically transacted, solicited, and conducted business in the State of South Carolina, including Charleston County.

19.     At all relevant times hereto, Carcast Express was a motor carrier pursuant to 49 C.F.R. Part 392.3 and 49 C.F.R. Part 395.1 and 49 C.F.R. Part 395.8 acting under the control of the Amazon Defendants.

20.     At the time of the Subject Collision, Defendant Primex Logistics, LLC ("Primex" was, upon information and belief, and remains a limited liability company formed under the laws of the State of Florida with its principal place of business in Duval County, Florida.

21.     At the time of the Subject Collision, Primex was an active interstate Motor Carrier (USDOT# 3462161) registered with the Federal Motor Carrier Safety Administration.

22.     At all relevant times hereto, Primex operated a trucking company engaged in interstate commerce, and regularly and systematically transacted, solicited, and conducted business in the State of South Carolina, including Charleston County.

23.     At all relevant times hereto, Primex was a motor carrier pursuant to 49 C.F.R. Part 392.3 and 49 C.F.R. Part 395.1 and 49 C.F.R. Part 395.8 acting under the control of the Amazon Defendants.

24.     At the time of the Subject Collision, Defendant Adam Yahia ("Yahia") was, upon information and belief, a citizen and resident of Duval County, Florida.

25.     At all relevant times hereto, Yahia was a motor carrier driver pursuant to 49 C.F.R. Part 392.3 and 49 C.F.R. Part 395.1 and 49 C.F.R. Part 395.8 operating and performing services for Carcast Express, Primex, and the Amazon Defendants as an employee, agent, apparent agent, and/or servant while acting under the control of the Amazon Defendants as an Amazon Relay Driver.under the control of the Amazon Defendants.

26.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction based on complete diversity of citizenship of the parties and because the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars exclusive of interest and costs.[1]

---

[1]     As a result of the Subject Collision, Mr. Whaley has suffered past and future medical expenses alone, well exceeding Ten Million ($10,000,000.00) Dollars. Plaintiff has been, and will be, the primary caretaker for Mr. Whaley and his 47% permanent whole person impairment for his physical injuries, moderate-to-severe traumatic brain injury, urological difficulties, and permanent impotency. Pursuant to Dr. Wagner, an expert retained by the Amazon Defendants in Mr. Whaley's case, Plaintiff's emotional damages are equal to or exceed those of Mr. Whaley. All told, Plaintiff's loss of consortium damages may exceed the value of Mr. Whaley's damages, but, certainly exceed $75,000.00.

27.     In accordance with 28 U.S.C. § 1391 and Local Civil Rule 3.01(A)(1), venue is proper in the Charleston Division of the District of South Carolina as the acts or omissions occurred in the Charleston Division of South Carolina.

28.     This Court has jurisdiction over the Parties and the subject matter of this action, and venue in this Court is proper.

## FACTUAL ALLEGATIONS

### A.     THE AMAZON DEFENDANTS AND AMAZON RELAY

29.     The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly, and with due caution. Accordingly, there are a number of federal regulations, state statutes, industry standards, and local ordinances that govern the qualification, training, supervision, and retention of professional tractor-trailer drivers; the proper maintenance and equipment for commercial motor vehicles; and the safe operation of brokers, motor carriers, commercial motor vehicles and professional truck drivers.

30.     As part of a strategy to vertically integrate and take control of shipping and logistics away from third parties, such as FedEx and UPS, the Amazon Defendants have been building, refining, expanding, and using a logistics and transportation network of their own to transport goods from manufacturers and retailers to its warehouses, distribution centers, and ultimately to customers throughout the country, including South Carolina.

31.     The Amazon Defendants' vast logistics and transportation network is managed by Defendant Amazon Logistics and/or Defendant Amazon Services and/or Defendant Amazon.com.

32.     As part of this strategy, the Amazon Defendants routinely enter into contracts with shippers, transportation companies, interstate motor carriers, intrastate motor carriers, and local

delivery partners to ensure that items purchased by the customers are picked up from the shippers and timely delivered to the customers.

33.     At all times pertinent hereto, the Amazon Defendants used various programs to ensure packages were delivered rapidly, with an emphasis that packages must be delivered precisely at the time the Amazon Defendants have scheduled in order to meet Amazon.com's promises to their end customers as to when the product would be delivered.

34.     Upon information and belief, the Amazon Defendants, to save money on product deliveries, have engaged in a "race to the bottom" of the trucking industry as its rates of compensation for truck drivers and motor carriers have decreased in recent years to less than market rates—a disincentive for competent and safe professional truck drivers and motor carriers, who can find work elsewhere.

35.     In addition, to combat the nationwide shortage of professional truck drivers, the Amazon Defendants have begun encouraging people with no experience driving commercial motor vehicles, and businesses with no experience operating interstate motor carriers or trucking companies, to start their own trucking companies to transport goods for the Amazon Defendants.

36.     To obtain interstate motor carrier operating authority from the United States Department of Transportation ("USDOT") through its Federal Motor Carrier Safety Administration ("FMCSA"), a person or business is only required to complete an online application, pay $300.00, and show proof of the minimum insurance limits.

37.     The Amazon Defendants knew that to obtain interstate motor carrier operating authority from the FMCSA, a person or business is only required to complete an online application, pay $300.00, and show proof of the minimum insurance limits.

38.     Once the application process is complete, a new entrant is typically granted interstate motor carrier operating authority within 30-60 days.

39.    While the new applicant must agree to abide by the applicable Federal Motor Carrier Safety Regulations ("FMCSRs"), the FMCSA does not conduct any safety audit or investigation on whether the motor carrier applicant has appropriate safety management controls in place to comply with the FMCSRs before granting new entrants interstate motor carrier operating authority.

40.    The Amazon Defendants knew that while the new applicant must agree to abide by the applicable FMCSRs, the FMCSA does not conduct any safety audit or investigation on whether the motor carrier applicant has appropriate safety management controls in place to comply with the FMCSRs before granting new entrants interstate motor carrier operating authority.

41.    These newly authorized motor carriers are designated "New Entrant" motor carriers and have no safety rating from the FMCSA, with a safety designation of "Unrated".

42.    The Amazon Defendants also use other motor carriers that are not New Entrants but that are also designated as "Unrated," meaning they have not passed a safety audit by the FMCSA verifying that the motor carrier has appropriate safety management controls in place to comply with the FMCSR, to transport freight safely across the roadways of the United States.

43.    The Amazon Defendants utilize these "Unrated" motor carriers without any further investigation or inquiry into their safety management controls and/or safety history.

44.    Once a company has obtained interstate operating authority, it can become part of the Amazon Defendant's network by simply applying to "partner with Amazon" to haul loads of freight under the Amazon Defendants' Relay Program despite having no safety rating and without any confirmation that the motor carrier has the required safety management controls in place to ensure compliance with the appliable FMCSRs, which are in place to ensure the safe movement of products through the transportation system and to reduce the risk of highway incidents resulting in fatalities, injuries, and property damage.

45.    The Amazon Defendants do not conduct any safety investigation into motor carriers or drivers beyond verifying current operating authority, proof of insurance, and that the motor carrier does not have a safety rating of "Unsatisfactory".

46.    The Amazon Defendants require motor carriers to agree to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, which also include the Code of Business Conduct and Ethics and the Supplier Code of Conduct, to become Amazon Relay Partners.

47.    The Amazon Defendants require drivers to agree to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, which also include the Code of Business Conduct and Ethics and the Supplier Code of Conduct, to become Amazon Relay Drivers.

48.    The Amazon Defendants do not allow motor carriers, such as Carcast Express and Primex, or drivers, such as Yahia, to negotiate any of the terms contained in the Amazon Relay Carrier Terms of Service or the Amazon Relay Program Policies.

49.    At all times material hereto, the Amazon Defendants maintain the right to control Amazon Relay Partners and Drivers while performing services or assignments for Amazon Relay.

50.    At all times material hereto, Carcast Express and Primex were approved Amazon Relay Partners and Yahia was an approved Amazon Relay Driver.

51.    Pursuant to the FMCSR, an employee is defined as any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course and scope of operating a commercial motor vehicle).

52.     Through the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, the Amazon Defendants retain control of many aspects of the transportation related services provided by motor carriers and drivers, to include receiving, loading, storing, transporting, delivering, and unloading the Amazon Defendants' products; complying with the Amazon Defendants' and any third party's safety and security policies related to the Amazon Defendants' or such third party's premises and cargo; waiver of lien and salvage rights; notification and reporting requirements; limitations on times of the year the Amazon Relay Carrier Terms of Service can be terminated; defense of claims and choice of counsel; compliance with all state and local traffic laws; agreement to the interchange use of all trailers; inspections and reporting for trailers; limitations on repairs to trailers without Amazon's consent; requiring compliance with the Amazon Defendants' multi-stop, one way, or spot work given on an ad hoc basis; dedicated box trucks; delivery times and routes; regulating entry onto the Amazon Defendants' property through use of guard gates; full compliance with all of the Amazon Defendants' policies, procedures and instructions provided by the Amazon Defendants for any third-party shipper or trip; preventing any subcontracting or "double brokering" of the loads assigned by the Amazon Defendants; exclusive use while transporting for the Amazon Defendants; requiring separate accounts for each affiliate of the Amazon Defendants; compliance with the Amazon Defendants' required technology; limitations on how motor carriers hire and classify their truck drivers; exclusive authority to amend or modify; exclusive authority to terminate without cause; requiring the design and implementation of specific programs for measuring service levels for the Amazon Defendants; requiring the Amazon Defendants' specific business activity reports to be kept; access to, and electronic copies of, all records and data; collection and ownership of all data, to include all data generated through mobile technology, a website, or a telematics or e-

logging device; requirements for loads, routes, and equipment; and the training and monitoring of Relay Partners and Drivers.

53.    The Amazon Defendants exert control over the details of the work done by Amazon Relay Partners and Drivers using a variety of tools, including internal compliance teams and a third-party compliance monitoring service, to continually monitor the Amazon Relay Partners' and Drivers' compliance with their policies and to make sure the Amazon Relay Partners and Drivers deliver the Amazon Defendants' goods on time.

54.    The Amazon Defendants provide Amazon Relay Partners and Drivers with equipment required to be used in performing services for the Amazon Defendants, such as Amazon Relay assignments or loads and the Amazon Defendants' owned trailers.

55.    The Amazon Defendants provide Amazon Relay Partners with, and require Amazon Relay Partners to use, the Amazon Relay Program, which is a suite of technology products that enable motor carriers to self-register with Amazon Relay and find, book, and execute Amazon Relay assignments or loads.

56.    The Amazon Defendants provide Amazon Relay Drivers with, and require Amazon Relay Drivers to use, the Amazon Relay Program when executing Amazon Relay assignments or loads.

57.    Amazon Relay Partners use the Amazon Relay Program to accept loads, assign Amazon Relay Drivers, view the Amazon Defendants' grading of Amazon Relay Driver performance and Amazon Relay Partner performance overall, access the Amazon Defendants' Relay Load Board, track performance, view and download payment details, and report concerns, among others.

58.    Through the Load Board in the Amazon Relay Program, Amazon Relay Partners and Drivers can search for and attempt to book or obtain assignments in their area.

59.     The assignments on the Load Board are preset by the Amazon Defendants to include details such as the departure time and locations for the Amazon Relay assignment or load; arrival and departure times for each stop along the way; and the required arrival time at the final destination.

60.     The Amazon Defendants control the amount and method of payment for each assignment on the Load Board.

61.     Amazon Relay Partners and Drivers are not allowed to negotiate the amount or method of payment for assignments on the Load Board with the Amazon Defendants.

62.     The Amazon Defendants automatically generate "invoices" through the Amazon Relay Program, with the pay week running from Sunday to Saturday and Amazon Relay Partners and Drivers typically get money deposited directly into their bank accounts the following Friday.

63.     When the Amazon Defendants assign an Amazon Relay assignment to an Amazon Relay Partner, the Amazon Defendants generate an Amazon Reference Number ("ARN") and a corresponding Bill of Lading ("BOL"), which is required by the FMCSR, to be delivered to the Amazon Relay Driver.

64.     Pursuant to the FMCSR, the BOL must include the name of any motor carrier who will participate in the shipment of the goods.

65.     The only motor carrier identified on the BOL for the Amazon Relay load or assignment Yahia was carrying at the time of the Subject Collision was AZNG, which is an identifier for the Amazon Defendants.

66.     The motor carriers identified on the BOL assume responsibility for the shipment of the goods.

67. Once an Amazon Relay Partner obtains an assignment, the Amazon Relay Partner must then assign an Amazon Relay Driver through the Amazon Relay Program, and the assignment appears on the Amazon Relay Driver's Amazon Relay Program.

68. Once the Amazon Relay Driver is assigned to a load in the Amazon Relay Program, the Amazon Defendants no longer communicate with the Amazon Relay Partner, but all communications are directly with the Amazon Relay Driver by way of the Amazon Relay Program and telephone communication.

69. When an Amazon Relay Partner or Driver books an assignment through the Amazon Relay Program, the Amazon Defendants generate a map for navigation provided directly to the Amazon Relay Driver, dictating the exact route the Amazon Relay Driver is to follow and identifying each stop with numbers on the map and delivery times.

70. At all times material hereto, the Amazon Defendants controlled the route for Amazon Relay Drivers and, as such, were required to provide Amazon Relay Drivers with safe routes of travel for commercial motor vehicles, to include routing via the interstate and avoiding severe or inclement weather conditions.

71. Amazon Relay Drivers use the Amazon Relay Program to report delays to the Amazon Defendants and to update their estimated time of arrival.

72. At all times, throughout the Amazon Relay assignments, the Amazon Defendants know the identity of the Amazon Relay Drivers transporting their freight and can and do control and monitor those Amazon Relay Drivers and the location of their loads through the Amazon Relay Program.

73. Some of the Amazon Relay assignments or loads, such as the one being performed by Carcast Express, Primex, and Yahia at the time of the Subject Collision, involve an Amazon Relay Driver entering one of the Amazon Defendants and/or vendor fulfillment centers to connect

an Amazon Relay Partner's tractor to a trailer that is owned, selected, and preloaded by the Amazon Defendants.

74. Pursuant to the FMSCR, a trailer is a commercial motor vehicle.

75. On these Amazon Relay assignments or loads, Amazon Relay Partners and Drivers are not allowed to use different trailers from those owned, selected, provided, and loaded by the Amazon Defendants.

76. The Amazon Defendants utilize a guard gate at the Amazon Defendants and/or vendor fulfillment centers to control access and protect the Amazon Defendants' goods, packages, and equipment.

77. When performing an Amazon Relay assignment, Amazon Relay Partners and Drivers must go through the Amazon Defendants' guard gate to enter and/or exit the Amazon Defendants and/or vendor fulfillment centers.

78. Upon information and belief, the Amazon Defendants' guard gate records all vehicles entering and exiting the Amazon Defendants and/or vendor fulfillment centers.

79. Pursuant to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, the Amazon Defendants require all trailer tandems to be positioned and remain in the most rearward position the entire time the trailers are at the Amazon Defendants and/or vendor fulfillment centers, resulting in a kingpin violation at the time of the Subject Collision.

80. At all times pertinent hereto, specifically to include the date and time of the Subject Collision, the Amazon Defendants monitored the performance of Amazon Relay Partners and Drivers using three metrics:

    a. the rate of on-time deliveries;

    b. tender acceptance (not canceling after booking a load); and

    c. usage of the Amazon Relay Program app.

81.     Amazon Relay Partners and Drivers who meet Amazon's performance goals are rewarded with early access to certain assignments posted on the Load Board before the assignments become available to other Amazon Relay Partners and Drivers.

82.     Amazon Relay Partner's and Driver's safety, including adherence to or violation of speeding laws, is not considered in the Amazon Defendants' performance metrics.

83.     Although Amazon Relay Drivers are permitted to arrive early at their destinations, the Amazon Relay Partners and Drivers are punished for arriving late.

84.     While Amazon Relay Partners and Drivers are penalized for canceling an Amazon Relay assignment or load, the Amazon Defendants may cancel or reschedule an assignment or load without notice at any time before the Amazon Relay assignment or load begins with no penalty.

85.     The Amazon Defendants can suspend or terminate Amazon Relay Partners and Drivers for any reason, including not meeting the Amazon Defendants' aforementioned performance metrics or other items in the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies.

86.     At all times throughout the performance of assignments in the Amazon Relay Program, the Amazon Defendants maintained the right to direct the Amazon Relay Partners and Drivers performing the assignments, as well as the time, place, degree, and amount of such assignments.

87.     At all times throughout the performance of assignments in the Amazon Relay Program, the Amazon Defendants have non-delegable duties to ensure that the Amazon Relay Partners they approved, hired, selected, and retained to deliver its goods throughout the United States in tractor-trailers and other commercial motor vehicles, and the Amazon Relay Drivers the Amazon Defendants approved, monitored, controlled, and retained, were reasonably safe and

complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on South Carolina roadways.

**B.     CARCAST EXPRESS, PRIMEX, AND YAHIA'S INVOLVEMENT WITH THE AMAZON DEFENDANTS**

88.     At all times material hereto, Carcast Express and Primex were motor carriers acting within the ordinary course and scope of their employment, agency, apparent agency, service, and under the control of the Amazon Defendants as Amazon Relay Partners.

89.     Carcast Express and Primex, agreed to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, which also include the Code of Business Conduct and Ethics and the Supplier Code of Conduct, and were, at all times material hereto, approved Amazon Relay Partners.

90.     At all times material hereto, Primex was an "Unrated" motor carrier.

91.     Carcast Express, Primex, and the Amazon Defendants were interstate motor carriers authorized to transport goods in interstate commerce and in the State of South Carolina pursuant to one or more permits issued by the Interstate Commerce Commission ("ICC") and/or by the USDOT. Accordingly, Carcast Express, Primex and the Amazon Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring, training, and supervision of safe and qualified commercial truck drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including, without limitation, South Carolina Uniform Act Regulating Traffic on Highways, S.C. Code Ann. § 56-5-10, *et seq*., and the applicable FMCSR set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

92.     At all times material hereto, Carcast Express, Primex, and the Amazon Defendants had non-delegable duties to ensure that their drivers and commercial motor vehicles were

reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on roadways in the State of South Carolina.

93.     At all times material hereto, Yahia was a Class A licensed commercial motor vehicle operator driving and performing services for Carcast Express, Primex, and the Amazon Defendants as an employee, agent, apparent agent, and/or servant while acting under the control of the Amazon Defendants as an Amazon Relay Driver.

94.     Yahia agreed to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, which also include the Code of Business Conduct and Ethics and the Supplier Code of Conduct and was, at all times material hereto, an approved Amazon Relay Driver.

95.     At all times material hereto, Yahia was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles.

96.     Pursuant to the FMCSR, Yahia was employed by Carcast Express, Primex, and the Amazon Defendants and his operation of commercial motor vehicles while performing services for Carcast Express, Primex, and the Amazon Defendants directly affected commercial motor vehicle safety.

97.     At all times material hereto, Yahia was an employee, agent, apparent agent, and/or servant driving and performing services for Primex, Carcast, and the Amazon Defendants.

98.     While working for Carcast Express and Primex, Yahia exclusively transported Amazon Relay assignments or loads for the Amazon Defendants.

99.     At all times material hereto, every Amazon Relay load obtained by Carcast Express and Primex and subsequently assigned to Yahia was subject to the control of the Amazon Defendants.

100.    From January 5, 2021 until the Subject Collision, Yahia consistently and habitually drove in excess of the posted speed limit while working and performing services for Carcast Express, Primex, and the Amazon Defendants – over 25% of his overall driving time.

101.    At all times material hereto, Carcast Express, Primex, and the Amazon Defendants had the right and ability to monitor Yahia's speed and compliance with traffic laws.

102.    All data collected with reference to Yahia while performing Amazon Relay assignments or loads, including his speeding and harsh braking events, was accessible to Carcast Express, Primex, and the Amazon Defendants, as well as owned and controlled by the Amazon Defendants pursuant to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies.

103.    Carcast Express, Primex, and the Amazon Defendants knew or should have known that Yahia consistently and habitually drove in excess of the posted speed limit – over 25% of his overall driving time.

104.    Speeding 25% of the time while driving a commercial motor vehicle is unsafe, dangerous, and a predictor of collisions just like the Subject Collision where Yahia was speeding.

105.    Carcast Express, Primex, and the Amazon Defendants did not discipline, reprimand, suspend, or terminate Yahia for any reason prior to the Subject Collision, to include his consistent and habitual violation of speed limits.

106.    From December 21, 2021 until the Subject Collision, Primex booked twenty-four (24) Amazon Relay assignments or loads for the Amazon Defendants that Primex assigned to Carcast Express and Yahia.

107.    Yahia picked up and delivered all twenty-four (24) Amazon Relay assignments or loads that were assigned to Primex for the Amazon Defendants in a Carcast Express tractor, with a Carcast Express placard, and while logging hours of service on behalf of Carcast Express.

108.     From December 21, 2021 until the Subject Collision, the Amazon Defendants permitted Yahia to check in and check out of fifteen (15) different fulfillment centers, including JAX2, JAX3, JAX5, AGS5, TPA2, CHA1, KLAL, MCO2, RDU5, DGE4, PAHY7, VENDOR 169165831 (TPCH), VENDOR 169285741, VENDOR 174269311, and VENDOR 162011341, while driving a tractor owned by and displaying a placard for Carcast Express while performing an Amazon Relay assignment for Primex.

109.     From December 21, 2021 until the Subject Collision, the Amazon Defendants would, or should, have recorded at least ninety (90) occasions where Yahia was permitted to enter and/or exit one of the fulfillment centers in a tractor owned by Carcast Express while performing an assignment obtained by Primex.

110.     Of these ninety (90) occasions Yahia was permitted to enter and/or exit one of the fulfillment centers in a tractor owned by Carcast Express while performing an assignment obtained by Primex, at least seventy (70) of those occurred at a fulfillment center owned and operated by the Amazon Defendants.

111.     Each time Yahia entered and/or exited one of the Amazon Defendants' fulfillment centers, approximately four (4) to thirty (30) employees and/or representatives of the Amazon Defendants would, or should, have seen Yahia in a tractor owned by Carcast Express while performing an assignment obtained by Primex.

112.     The Amazon Defendants did not discipline, reprimand, suspend, or terminate Primex for double brokering until well after the Subject Collision, on or about March 20, 2024.

113.     The Amazon Defendants never disciplined, reprimanded, suspended, or terminated Yahia and/or Carcast Express for any reason, to include consistent and habitual speeding and double brokering.

114.     The Amazon Defendants failed to follow its own policies and procedures, including the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, by allowing Yahia to habitually violate speed limits and Carcast Express and Primex to double broker Amazon Relay assignments or loads.

## C.     THE SUBJECT LOAD

115.     On or about January 5, 2022, Yahia was selected as the Amazon Relay Driver for an Amazon Relay load indicating ARN: 16310999541 ("Subject Load"). The Subject Load was assigned to Primex through the Amazon Relay Program.

116.     Yahia was instructed to pick up a specific preloaded trailed owned and operated by the Amazon Defendants at Tradeport Logistics in Mt. Pleasant, South Carolina to be delivered to the Amazon Defendants' fulfillment centers in Jacksonville, Florida. Yahia had completed this Amazon Relay assignment or load on several occasions prior to January 5, 2022.

117.     For purposes of the Subject Load, on or about January 5, 2022, at approximately 5:10 a.m., Yahia entered the Amazon Defendants' guard gate at Tradeport Logistics, which was a vendor fulfillment center in Mt. Pleasant, South Carolina, to connect a 2017 Freightliner tractor bearing VIN: 3AKJGLDVXHSJG4933 ("Subject Tractor") to a 2022 Great Dane trailer bearing VIN 1GR1A0627NB333825 ("Subject Trailer") that had been preloaded by the Amazon Defendants.

118.     At all times material hereto, the Subject Tractor was owned by Carcast Express and was being driven by Yahia under the operating authority of Carcast Express and/or Primex, while under the direction and control of the Amazon Defendants as an Amazon Relay Driver.

119.     At all times material hereto, the Subject Trailer was owned by the Amazon Defendants and was being driven by Yahia under the operating authority of the Amazon

Defendants, while under the direction and control of the Amazon Defendants as an Amazon Relay Driver.

120.    At all times material hereto, Yahia, Carcast Express, and Primex were using the Subject Trailer with the permission of and for the benefit of, and at the exact direction and control of the Amazon Defendants.

121.    The Amazon Defendants owned, controlled, entrusted, and provided the Subject Trailer, a commercial motor vehicle, to Yahia.

122.    At all times, the Subject Trailer owned by the Amazon Defendants was a dangerous instrumentality that made the Subject Tractor even more dangerous due to increased size, weight, and striking force.

123.    At all times material hereto, the Subject Trailer was in an unsafe condition due to the rear tandems being positioned in the most rearward position at the direction and under the control of the Amazon Defendants, resulting in a kingpin violation at the time of the Subject Collision.

124.    At all times material hereto, Yahia was an approved Amazon Relay Driver.

125.    At all times material hereto, Carcast Express and Primex were approved Amazon Relay Partners.

126.    Pursuant to the BOL provided by the Amazon Defendants for the Subject Load, the only carrier was AZNG, which is an identifier for the Amazon Defendants.

127.    Pursuant to the BOL, the Amazon Defendants held themselves out as responsible for the Subject Load and assumed responsibilities particular to motor carriers.

128.    Upon information and belief, based on the BOL, any person dealing with the Subject Load understood, or would have, that the Amazon Defendants assumed responsibility for the Subject Load as the motor carrier.

129.    On or about January 5, 2022, at approximately 6:22 a.m., Yahia exited the Amazon Defendants' guard gate at Tradeport Logistics in the Subject Tractor with the Subject Trailer.

130.    Upon information and belief, Yahia followed the route that was always provided by the Amazon Defendants through the Amazon Relay Program from Tradeport Logistics to the scene of the Subject Collision.

131.    Upon information and belief, on the other occasions Yahia had performed Amazon Relay assignments or loads from Tradeport Logistics in Mt. Pleasant, South Carolina to the Amazon Defendants' fulfillment centers in Jacksonville, Florida, the Amazon Defendants always routed him down US Highway 17.

132.    Upon information and belief, at all times material hereto, Amazon repeatedly routed Yahia on US Highway 17 when traveling back to Jacksonville from Mt. Pleasant.

D.    **THE SUBJECT COLLISION**

133.    At all times material hereto, Yahia was an employee, agent, apparent agent and/or servant driving and performing services for Carcast Express, Primex, and the Amazon Defendants.

134.    At the time of the Subject Collision, Yahia was acting in the ordinary course and scope of his employment, agency, apparent agency, and/or service and subject to Carcast Express, Primex, and the Amazon Defendants' control or right to control, such that Carcast Express, Primex, and the Amazon Defendants should be considered his actual and statutory employer, agent, apparent agent and/or servant.

135.    At the time of the Subject Collision, Yahia, Carcast Express, and Primex were acting within the ordinary course and scope of their employment, agency, apparent agency, and/or service and subject to the Amazon Defendants control or right to control, such that Yahia, Carcast Express, and Primex should be considered the actual and statutory employees, agents, apparent agents, and/or servants of the Amazon Defendants.

136.    On January 5, 2022, at approximately 6:56 a.m., Mr. Whaley was a restrained driver turning left onto US Highway 17 at the intersection of Davison Road and US Highway 17 in Ravenel, South Carolina.

137.    At or about the same time, Yahia was driving the Subject Tractor and towing the Subject Trailer in the course and scope of his employment with and in his capacity as an employee, agent, apparent agent, and/or servant of Carcast Express, Primex, and the Amazon Defendants.

138.    While traveling south on US Highway 17, Yahia was confronted with severe weather conditions characterized by heavy rain and strong winds.

139.    As Yahia approached the intersection of Davison Road and US Highway 17, he was traveling in excess of the posted speed when he disregarded the official traffic control device, which was red, and drove directly into the driver's side of Mr. Whaley's vehicle, causing a collision that was more violent due to the added size, weight, and striking power of the Subject Trailer, thereby causing more injury to Mr. Whaley.

140.    The impact of the collision forced Mr. Whaley's vehicle off the roadway and caused Mr. Whaley to suffer catastrophic and permanent injuries.

141.    At all times material hereto, Mr. Whaley possessed the right-of-way, as the official traffic control device was green for his lane and direction of travel.

142.    Prior to the Subject Collision, the last speed limit sign Yahia passed indicated a maximum speed limit of 50 mph. As Yahia approached the intersection of Davison Road and US Highway 17, he was traveling 60 mph.

143.    Immediately following the Subject Collision, Yahia told police officers he had the green light.

144.    Yahia later testified that he saw a green light which suddenly changed to red.

145.    However, as Yahia was approaching the intersection of Davison Road and US Highway 17, he would have had, at a minimum, five (5) seconds of yellow light and fourteen (14) seconds of red light before colliding with Mr. Whaley's vehicle, which is over 1200 feet.

146.    At the time of the Subject Collision, Yahia was operating the Subject Tractor and the Subject Trailer in such a reckless, careless, and negligent manner so as to disregard an official traffic control device while speeding in severe weather and, ultimately, striking Mr. Whaley's vehicle with great force.

147.    At all times material hereto, Yahia had an unsafe history of operating commercial motor vehicles.

148.    At all times material hereto, Primex, Carcast Express and the Amazon Defendants knew or should have known of Yahia's unsafe history of operating commercial motor vehicles, either through a simple and inexpensive search, due diligence, by requiring Yahia to disclose the same on his employment application, or review of the data collected and maintained from the Amazon Relay Program and Samsara, as well as other data and records, all of which showed Yahia's extensive history of speeding on Amazon Relay assignments and loads for over a year prior to the Subject Collision.

149.    At all times material hereto, the Amazon Defendants knew or should've known Yahia was delivering Amazon Relay loads on behalf of the Amazon Defendants as a driver for both Primex and Carcast Express.

150.    At all times material hereto, Yahia was a dangerous and incompetent commercial motor vehicle operator with a history of safety issues, violations of state and federal laws and regulations and industry safety standards, and a poor record for safety.

151.    That information was readily available to Yahia, Carcast, Primex, and the Amazon Defendants, including on the in-truck Samsara system, which provided real-time and historical access to violations of speed limits and disregarding official traffic control devices.

152.    At all times material hereto, the following has been provided, shown, and/or admitted through sworn deposition testimony regarding Yahia, Carcast, Primex, and the Amazon Defendant, and the Subject Collision:

    a.  Prior to the Subject Collision, while carrying Amazon Relay assignments or loads, Yahia would habitually drive in excess of the maximum speed limit, exceeding over 25% of his overall drive time;

    b.  Yahia was trained to operate commercial motor vehicles by the CDL Manual and FMCSR regulations. Yahia conceded that, pursuant to the CDL Manual and FMCSR regulations, when driving in rain and adverse weather conditions, he should use extreme caution and have a maximum speed of 35 mph when traveling on a roadway with a speed limit of 55 mph;

    c.  Yahia failed the Florida CDL General Requirements test nine (9) times prior to obtaining his CDL;

    d.  Yahia does not read English well enough to understand or read the FMCSR, specifically the regulation titled "Hazardous conditions; extreme caution", but is required by the FMCSR to be able to read and understand the regulations in English;

    e.  Yahia repeatedly lied to his DOT Medical Examiner and on his DOT Medical Questionnaire by failing to disclose his history of certain health conditions, his noncompliance with taking his prescription medications for those health conditions, and the length of time his prior DOT Medical Certificates had been issued;

    f.  Yahia had a history of not taking his prescription medications as prescribed, but instead only taking the prescription medications at the time of his DOT Medical Examination for purposes of getting certified;

    g.  When not taking his prescription medications for his health conditions, he was routinely uncertifiable;

    h.  In November of 2021, just prior to the Subject Collision, Yahia, once again, was not taking his prescription medication for his health conditions when he went for his DOT Medical Examination. He was counseled by his DOT Medical Examiner that he had to take the prescription medications to be certified to drive a commercial motor vehicle;

i.  Between his DOT Medical Examination in November of 2021 and the Subject Collision, Yahia admittedly decided to stop taking his prescription medications without consulting his DOT Medical Examiner or Primary Care Physician;

j.  Yahia violated the FMCSR by falsifying his elog on the morning of January 4, 2022 when he claimed he was off duty while his cell phone was clearly moving from Jacksonville to Orlando, right by the Amazon MC02 warehouse, and back to Jacksonville;

k.  Yahia had a false elog at the time of the collision with Mr. Whaley, as he was driving his commercial motor vehicle long before going on duty;

l.  Yahia and/or Primex notified the Amazon Defendants of the Subject Collision on January 5, 2022;

m.  The Amazon Defendants called Yahia following the Subject Collision, at approximately 7:30 a.m. on January 5, 2022 and spoke with him for six (6) minutes;

n.  Despite being put on notice of the Subject Collision and knowing or having reason to the know the foregoing, the Amazon Defendants continued to employ Yahia as an Amazon Relay Driver and allowed him to continue delivering Amazon Relay loads after the Subject Collision.

153.    At all times material hereto, Primex, Carcast Express and the Amazon Defendants were aware or, with minimal effort, should have been aware of the above-described safety violations.

**E.    THE AMAZON DEFENDANTS' CONTROL OVER YAHIA, CARCAST EXPRESS, AND PRIMEX**

154.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

155.    The Amazon Defendants:

a.  Control the routes of travel of Amazon Relay Drivers;

b.  Control Amazon Relay load pick up location, pick up time, drop off location, and drop off time for all Amazon Relay loads;

c.  Control package assignments;

d.  Control trailer assignments;

e.   Control the loading and packing of Amazon trailers prior to departure of Relay Drivers, such as Yahia;

f.   Control the agreement with Amazon Relay Partners and Drivers and can terminate at any time, but Amazon Relay Partners and Drivers cannot terminate their agreement with the Amazon Defendants;

g.   Control which Amazon Relay Partners can obtain loads via the Long Board;

h.   Control which Amazon Relay Drivers enter the Amazon Defendants and/or vendor fulfillment centers;

i.   Control and own all data collected with reference to Amazon Relay Partners and Amazon Relay Drivers, including but not limited to, data with reference to speeds of travel, geolocation, and harsh braking;

j.   Require Amazon Relay Partners to onboard Amazon Relay Drivers to the Amazon Relay Application;

k.   Maintain and require Amazon Relay Partners to adhere to strict delivery schedules, requiring on-time deliveries;

l.   Maintain and track Amazon Relay Partner and Amazon Relay Driver performance;

m.   Provide trailers owned by the Amazon Defendants;

n.   Require Amazon Relay Partners and Amazon Relay Drivers to submit to audits at any time; and

o.   May inspect Amazon Relay Partners or Amazon Relay Drivers records at any time; and

156.   In addition to the foregoing, the Amazon Defendants routinely ignored and violated the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies with regard to Carcast Express, Primex and Yahia by failing to prohibit excessive speeding and double brokering.

## F.   DAMAGES TO PLAINTIFF

157.   As a direct and proximate result of Defendants negligence causing serious injuries to Plaintiffs husband, Mr. Whaley, Plaintiff has been damaged and has been deprived of the care,

comfort, society, services and marital consortium of a kind and loving husband and father, and has suffered a loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

## FOR A FIRST CAUSE OF ACTION
(*Negligence/Gross Negligence as to Defendants Yahia, Carcast Express, Primex, and the Amazon Defendants*)

158.   Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

159.   At all times relevant hereto, Yahia was an employee, agent, and legal representative of Primex, Carcast Express and the Amazon Defendants acting in the ordinary course and scope of his employment.

160.   Primex, Carcast Express and the Amazon Defendants controlled the actions of Yahia on January 5, 2022, and therefore are responsible for his actions and inactions on January 5, 2022.

161.   The Subject Collision, injuries, and damages described in this Complaint were the direct, foreseeable, and proximate result of the negligent and careless, and willful, wanton, reckless, and grossly negligent acts or omissions of Yahia, who was acting in the ordinary course and scope of his employment, agency, and representation of Primex, Carcast Express and the Amazon Defendants, in the following particulars to wit:

a.   Failing to keep a proper lookout;

b.   Failing to maintain his commercial motor vehicle under proper control;

c.   Failing to yield the right of way to Mr. Whaley's vehicle in accordance with S.C. Code Ann. § 56-5-580, when the vehicle occupied by Mr. Whaley possessed the right of way at all times pertinent hereto;

d.   Driving a commercial motor vehicle in such a manner to indicate willful, wanton, reckless, grossly negligent, and negligent disregard for the safety of others, in violation of S.C. Code Ann. § 56-5-2920;

e.  Failing to obey official traffic-control devices, in violation of S.C. Code Ann. § 56-5-1535;

f.  Failing to have due regard for the speed of such vehicles and the traffic upon and the condition of the roadway, in violation of S.C. Code Ann. § 56-5-1930;

g.  Failing to safely operate a commercial motor vehicle in dark and rainy weather conditions;

h.  Recklessly operating a commercial motor vehicle in such a manner as to indicate a willful or wanton disregard for the safety of persons and property, in violation of S.C. Code Ann. § 56-5-2920;

i.  Operating an unsafe commercial motor vehicle, in violation of S.C. Code Ann. § 56-5-4410 and 56-5-5310;

j.  Failing to operate a commercial motor vehicle with a valid medical certificate, as required by the FMCSR;

k.  Failing to operate a commercial motor vehicle in the manner required by the FMCSR, including in violation of Hours of Service rules;

l.  Failing to operate a commercial motor vehicle in the manner required by the professional standards established by South Carolina, including in violation of Hours of Service rules and speeding;

m.  Operating a commercial motor vehicle with inadequate lamps and reflective devices in violation of FMCSR 393.9(a);

n.  Failing to properly maintain, inspect, service and repair the commercial motor vehicle in violation of the FMCSR and state laws;

o.  Permitting use of and operating a trailer with an overlength kingpin in violation of FMCSR 392.2;

p.  Failing to properly perform and document the pre- and post-trip inspections in violation of the FMCSR and state laws;

q.  Failing to use the degree of care and caution that a reasonable person would have used under the circumstances then and there prevailing; and

r.  In such other and further particulars as the evidence at trial may show.

All of which acts and omissions, or both, were the actual, direct, and proximate result of the damages and injuries claimed herein.

162.  As a direct, foreseeable, and proximate result of the negligent, grossly negligent,

reckless, willful, and wanton acts and omissions of Yahia, Carcast Express, Primex, and the Amazon Defendants as set out above, Mr. Whaley suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages and Plaintiff suffered injuries, which have caused, and in the future will cause her the deprivation of the care, comfort, society, services and marital consortium of a kind and loving husband and father, and has suffered a loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

163.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Yahia, Primex, Carcast Express and the Amazon Defendants as set out above, as well as their violations of federal and state law, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**FOR A SECOND CAUSE OF ACTION**
(*Negligent Entrustment as to Carcast Express, Primex and the Amazon Defendants*)

164.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

165.     Carcast Express, Primex and the Amazon Defendants knew or should have known before January 5, 2022 that Yahia was speeding over 25% of his drive time while on Amazon Relay assignments for the Amazon Defendants and incapable of operating his commercial motor vehicle in the manner as required by the FMCSR and state law.

166.     Based on readily accessible data from Samsara and the Amazon Relay Program, Yahia was speeding over 25% of the time he was driving on Amazon Relay assignments for the Amazon Defendants in the year prior to the Subject Collision.

167.     Carcast Express, Primex and the Amazon Defendants knew or should have known that Yahia's habitual speeding and lack of retraining were evidence that he was incapable of

complying with the FMCSR and state law, and he was therefore a reckless driver.

168.    Carcast Express, Primex and the Amazon Defendants entrusted a dangerous instrumentality, which was a commercial motor vehicle, to Yahia on January 5, 2022 despite knowing that he was habitually speeding and that Yahia's habitual speeding went unchanged prior to the Subject Collision.

169.    Carcast Express, Primex, and the Amazon Defendants had the right to suspend, retrain, or terminate Yahia prior to January 5, 2022.

170.    Carcast Express, Primex and the Amazon Defendants are therefore liable under the doctrine of negligent entrustment for the negligence of Yahia, which directly and proximately contributed to cause the Subject Collision and the injuries to Mr. Whaley as described above.

171.    As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Yahia, Carcast Express, Primex and the Amazon Defendants as set out above, Mr. Whaley suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages and Plaintiff suffered injuries, which have caused, and in the future will cause her the deprivation of the care, comfort, society, services and marital consortium of a kind and loving husband and father, and has suffered a loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

172.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Carcast Express, Primex, the Amazon Defendants, and Yahia as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**FOR A THIRD CAUSE OF ACTION**

(*Negligent Hiring, Training, Retention and Supervision as to Carcast Express, Primex, and the Amazon Defendants*)

173.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

174.    Carcast Express, Primex and the Amazon Defendants owed statutory and common law duties to Plaintiff not to negligently hire, supervise, or retain commercial truck drivers incapable of complying with all provisions of the FMCSR and state law.

175.    Carcast Express, Primex and the Amazon Defendants failed to properly review, interview, or interact with Yahia prior to hiring Yahia as a commercial truck driver.

176.    Carcast Express, Primex and the Amazon Defendants knew or should have known that Yahia lacked the proper training, experience, and ability to comply with all provisions of the FMCSR and state law.

177.    Carcast Express, Primex and the Amazon Defendants knew or should have known that Yahia's inexperience, lack of training, and inability to comply with the FMCSR were evidence that he was unable to comply with federal law and state law and was therefore a reckless driver.

178.    Carcast Express, Primex and the Amazon Defendants failed to adequately interact with Yahia prior to utilizing Yahia as a commercial truck driver.

179.    Carcast Express, Primex and the Amazon Defendants failed to properly supervise and train Yahia, in violation of the FMCSR and state law, including permitting Yahia to drive on January 5, 2022 knowing that Yahia would speed in excess of the posted speed limit for 25% of the Amazon Relay assignment.

180.    Carcast Express, Primex and the Amazon Defendants allowed Yahia to continue to operate a commercial motor vehicle including on January 5, 2022 without the most basic suspension, termination or retraining, in violation of the FMCSR and state law.

181.    As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Yahia, Carcast Express, Primex, and the Amazon Defendants as set out above, Mr. Whaley suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages and Plaintiff suffered injuries, which have caused, and in the future will cause her the deprivation of the care, comfort, society, services and marital consortium of a kind and loving husband and father, and has suffered a loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

182.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts of Carcast Express, Primex, the Amazon Defendants and Yahia as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

## FOR A FOURTH CAUSE OF ACTION
*(Negligence/Gross Negligence as the Amazon Defendants)*

183.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

184.    The Amazon Defendants, by and through its employees, agents, subsidiaries, and contractors, as an integral part of its business and promises to customers for prompt delivery of goods, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States of America.

185.    Amazon.com was the parent entity and mastermind of the Amazon Defendants' scheme to put profits over safety by delivering its goods to customers utilizing unsafe and unrated motor carriers without any regard for the safety of the motoring public.

186. The Amazon Defendants created a foreseeable zone of danger to the public, specifically to include Mr. Whaley, including the foreseeable danger and expected consequence that people would be injured and/or killed by the unsafe and inexperienced motor carriers and their dangerous drivers that the Amazon Defendants' employees, agents, related entities, and contractors selected to move their goods in interstate commerce, including Carcast Express, Primex and Yahia, as evidenced by, *inter alia*, the Amazon Defendants' decision to select the services of unfit, unqualified, unvetted, untrained, unsafe, habitually speeding in excess of the posted speed limit 25% of the time and/or dangerous Relay Partners and Drivers using the roads and highways of South Carolina.

187. Accordingly, the Amazon Defendants had ongoing nondelegable duties to act as a reasonable transportation carrier in the qualifying, monitoring, supervising, and selecting of reasonably safe Relay Partners to transport its freight.

188. Upon information and belief, the Amazon Defendants also had contractual duties with its product suppliers to only select satisfactory motor carriers that were safe, qualified, and able to move freight with proven or documented safety management controls in place.

189. The Amazon Defendants, by and through their employees, agents, subsidiaries, and contractors, undertook the duty to investigate, qualify, monitor, supervise, select, and retain Carcast Express and Primex as qualified Amazon Relay Partners and Yahia as an approved Amazon Relay Driver to move freight in interstate commerce for its customers and every Amazon Relay load, including the Subject Load.

190. The Amazon Defendants, through their unique business model, exercised and retained the right to control the movement of its goods, and regularly monitored the Relay Partners and Drivers delivering its freight.

191.    The Amazon Defendants breached those duties by and through its employees, agents, subsidiaries, and contractors, assigning and selecting Carcast Express and Primex as Amazon Relay Partners and Yahia as an Amazon Relay Driver, which were dangerous motor carriers and drivers with a lack of training and experience, and history of serious safety violations, including speeding 25% of the time and double brokering Amazon Relay loads, that showed they were likely to cause a collision.

192.    The Amazon Defendants breached those duties by not recognizing the dangerous and risky propensities of Carcast Express, Primex and Yahia by not utilizing or ignoring the information available regarding Primex, Carcast Express and Yahia and continuing to retain and assign Primex, Carcast Express and Yahia to move its Amazon Relay assignments or loads.

193.    The Amazon Defendants were or should have been aware that Primex and Carcast Express used Yahia to move its freight.

194.    Driving and operating the Tractor-Trailer involved in the Subject Collision constituted work that involved the risk of physical harm unless it was skillfully and carefully done. The Amazon Defendants knew or should have known of this but failed to take the necessary precautions with respect to this risk, in particular, the risk of speeding.

195.    The Amazon Defendants further failed to enact and enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating state traffic laws and the FMCSR while delivering goods for the Amazon Defendants.

196.    The Amazon Defendants failed to exercise the control it reserved and was authorized to exercise, pursuant to the Amazon Relay Carrier Terms of Service and the Amazon Relay Program Policies, over Amazon Relay Partners and Amazon Relay Drivers, including Carcast Express, Primex and Yahia, regarding violating speed limits and double brokering Amazon Relay assignments or loads, thereby exposing other motorists to unsafe acts and

omissions of those dangerous motor carriers and drivers, such that those acts and omissions unreasonably created a foreseeable risk of harm.

197.    The Amazon Defendants, by and through their employees, agents, subsidiaries, and contractors, breached its duties and were therefore negligent in one or more of the following ways:

a.  Failing to perform or improperly performing background, driving record, physical fitness and/or character investigations that would have revealed Carcast Express, Primex and Yahia were unsafe and/or incompetent to perform the task as assigned;

b.  Hiring and retaining Carcast Express, Primex and Yahia, despite the existence and ready availability of subpar driving records, which were or should have been known to the Amazon Defendants;

c.  Failing to verify and ensure that Carcast Express, Primex hired drivers that would operate the Tractor-Trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

d.  Failing to perform or improperly performing review, audit and load selection actions verifying Carcast Express, Primex and Yahia were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles, including not violating the speed limit;

e.  Failing to perform or improperly performing performance reviews and records checks that would have revealed Carcast Express, Primex and Yahia were unfit to safely operate a commercial motor vehicle, particularly speeding for one year prior to the wreck;

f.  Failing to adhere to the Amazon Defendants policies and procedures and preventing Carcast Express, Primex and Yahia from excessively speeding and double brokering Relay loads;

g.  Failing to suspend, terminate or retrain Yahia for speeding violations prior to the January 5, 2022 which would've prevented the wreck with Mr. Whaley;

h.  Failing to maintain the trailer in a safe condition by appropriately placing tandem wheels to avoid a kingpin violation; and

i.  Failing to review or utilize equipment in or on the Tractor-Trailer providing real-time and historical access to Yahia's continual violations of speed limits and disregard of official traffic control devices.

198.    As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of the Amazon Defendants, by and through their

employees, agents, subsidiaries, and contractors, as set out above, Mr. Whaley suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages and Plaintiff suffered injuries, which have caused, and in the future will cause her the deprivation of the care, comfort, society, services and marital consortium of a kind and loving husband and father, and has suffered a loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

199.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

**FOR A FIFTH CAUSE OF ACTION**
*(Vicarious Liability as to the Amazon Defendants)*

200.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

201.     Prior to the Subject Collision, the Amazon Defendants, by and through their employees, agents, subsidiaries, and contractors, had already hired, selected, employed, retained, and/or otherwise engaged the services of Carcast Express, Primex and Yahia to perform core tasks for and on behalf of the Amazon Defendants, including the delivery of goods in interstate commerce and on South Carolina roadways.

202.     The Subject Collision occurred while Carcast Express, Primex and Yahia were actively performing core tasks for and on behalf of the Amazon Defendants.

203.     On the date of the Subject Collision, Carcast Express, Primex and Yahia were acting as employees, agents, and/or servants of the Amazon Defendants as:

      a.  The Amazon Defendants, by and through its employees, agents, subsidiaries, and contractors, knew and acknowledged that Carcast Express, Primex and

Yahia would act for and on behalf of the Amazon Defendants by delivering goods for the Amazon Defendants;

b. Carcast Express, Primex and Yahia accepted that undertaking and were delivering goods in the Subject Trailer, owned by the Amazon Defendants, for the Amazon Defendants at the time of the Subject Collision; and

c. The Amazon Defendants, by and through its employees, agents, subsidiaries, and contractors, exercised control and/or reserved the right and authority to exercise control over Carcast Express, Primex and Yahia and the details of the services to be performed while acting within the scope of the agency delivering goods for the Amazon Defendants including without limitation by: controlling the route and time of delivery; and providing tools necessary to complete the transportation such as the Amazon Relay Program to arrange for, track, communicate with, and get paid for the Subject Load in question; by loading and providing the Trailer in question; by automatically generating invoices to pay Amazon Relay Partners and Drivers; by exclusively dictating the amount of pay for Amazon Relay loads; and by maintaining the exclusive authority to suspend and/or terminate Amazon Relay Partners and Drivers without cause, and all other items detailed in Paragraph 152 of this Amended Complaint.

204.    The Amazon Defendants are strictly liable for the acts and omissions constituting negligence and recklessness of Carcast Express, Primex and Yahia arising out of the work and services performed by Carcast Express, Primex and Yahia on behalf of the Amazon Defendants.

205.    The negligence of the Amazon Defendants agents, Carcast Express, Primex and Yahia, did directly and proximately contribute to cause the Subject Collision, Mr. Whaley's injuries, and Plaintiff's injuries.

### FOR A SIXTH CAUSE OF ACTION
(*Joint Venture as to the Amazon Defendants*)

206.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

207.    At all times material to this action, Amazon.com, Amazon Services, and Amazon Logistics acted as members of a joint venture for profit while conducting business together to be the world's largest online retailer delivering purchased products to end customers promptly,

sometimes even within hours. The joint venture necessarily required the transportation of goods in interstate commerce, including using the roads and highways of South Carolina.

208.    The joint venture included the delivery of the Subject Load on or about January 5, 2022, using Carcast Express, Primex and/or Yahia to move the goods in commerce using the roads and highways of South Carolina in exchange for profit that resulted in the Subject Collision, all for the benefit of the Amazon Defendants and within the scope of the joint venture.

209.    In pursuing the joint venture, the Amazon Defendants shared a common interest in the purposes to be accomplished and combined their resources or efforts or both, to undertake the joint venture, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

210.    The Amazon Defendants exercised joint control over the joint venture and/or retained the right or authority to control the joint venture, as well as Carcast Express, Primex and Yahia.

211.    The Amazon Defendants possessed some joint ownership interest in the subject matter of the joint venture.

212.    The Amazon Defendants possessed some right to share in the profits of the joint venture.

213.    The Amazon Defendants possessed some right to share in the losses of the joint venture.

214.    Accordingly, the Amazon Defendants are each jointly and severally responsible for the negligence of any single joint venturer, and for acts and/or omissions committed within the scope of the joint venture.

215.     The negligence and/or vicarious liability of at least one of the Amazon Defendants, described herein, did directly and proximately cause, or contribute to cause, the Subject Collision, Mr. Whaley's injuries, and Plaintiff's injuries.

216.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

## FOR A SEVENTH CAUSE OF ACTION
*(Joint Venture as to the Amazon Defendants Carcast Express, Primex and Yahia)*

217.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

218.     At all times material to this action, Amazon.com, Amazon Services, Amazon Logistics, Carcast Express, Primex and Yahia acted as members of a joint venture for profit while delivering Amazon's purchased products to end customers. The joint venture necessarily required the transportation of goods in interstate commerce, including using the roads and highways of South Carolina.

219.     The joint venture included the delivery of the Subject Load on or about January 5, 2022, using Carcast Express, Primex, and Yahia to move the goods in commerce using the roads and highways of South Carolina in exchange for profit that resulted in the Subject Collision, all for the benefit of the Amazon Defendants and within the scope of the joint venture.

220.     In pursuing the joint venture, the Amazon Defendants shared a common interest in the purposes to be accomplished and combined their resources or efforts or both, to undertake the joint venture, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

221.    The Amazon Defendants also joint ventured with Carcast Express, Primex and Yahia for the shared community of interest in the performance of the common purpose of delivering Amazon goods to Amazon facilities and end customers in order to enable Amazon to meet its customer expectations of immediate or prompt delivery of purchased Amazon goods.

222.    The Amazon Defendants, Carcast Express, Primex and Yahia, by and through their employees, agents, related entities, affiliates, and contractors, each exercised joint control over the joint venture and/or retained the right or authority to control the joint venture.

223.    The Amazon Defendants, Carcast Express, Primex and Yahia possessed some joint proprietary interest in the subject matter of the joint venture, including without limitation the prompt transportation of goods in interstate commerce for payment.

224.    The Amazon Defendants, Carcast Express, Primex and Yahia possessed some right to share in the profits of the joint venture, including without limitation the profits to the Amazon Defendants for the completed sale and delivery of the products, and the profits of the completing the transportation of the goods in interstate commerce for payment to Carcast Express, Primex and Yahia.

225.    The Amazon Defendants, Carcast Express, Primex and Yahia possessed some right to share in the losses of the joint venture, including without limitation the loss of profits to the Amazon Defendants and refunds to customers for damaged or destroyed Amazon products and late deliveries, and the loss of profits for not completing the transportation of the goods in interstate commerce, for payment to Carcast Express, Primex and Yahia.

226.    Accordingly, the Amazon Defendants, Carcast Express, Primex and Yahia are each jointly and severally responsible for the negligence of any single joint venturer, and for acts and/or omissions committed within the scope of the joint venture.

227.     The negligence and/or vicarious liability of at least one of the Amazon Defendants, Carcast Express, Primex, and Yahia, described herein, did directly and proximately cause, or contribute to cause, the Subject Collision, Mr. Whaley's injuries, and Plaintiff's injuries.

228.     Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants, Carcast Express, Primex and Yahia as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

### FOR AN EIGHTH CAUSE OF ACTION
(*Joint Enterprise as to the Amazon Defendants*)

229.     Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

230.     At all times material to this action, Amazon.com, Amazon Services, and Amazon Logistics acted as members of a joint enterprise for profit while conducting business together to be the world's largest online retailer delivering purchased products to end customers promptly, sometimes even within hours. The joint enterprise necessarily required the transportation of goods in interstate commerce, including using the roads and highways of South Carolina.

231.     The joint enterprise included the delivery of the Subject Load on or about January 5, 2022, using Carcast Express, Primex and/or Yahia to move the goods in commerce using the roads and highways of South Carolina in exchange for profit that resulted in the Subject Collision, all for the benefit of the Amazon Defendants and within the scope of the joint enterprise.

232.     In pursuing the joint enterprise, the Amazon Defendants expressly or impliedly agreed to share a common purpose to be accomplished by them and combined their resources or efforts or both, to undertake the joint enterprise, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

233.    The Amazon Defendants had an equal say in the direction of the joint enterprise and an equal right to control the joint enterprise and/or retained the right or authority to control the joint enterprise, as well as Carcast Express, Primex and/or Yahia.

234.    The Amazon Defendants had a community of pecuniary interest in the subject matter of the joint enterprise.

235.    Accordingly, the Amazon Defendants are each jointly and severally responsible for the negligence of any single member of the joint enterprise, and for acts and/or omissions committed within the scope of the joint enterprise.

236.    The negligence and/or vicarious liability of at least one of the Amazon Defendants, described herein, did directly and proximately cause, or contribute to cause, the Subject Collision, Mr. Whaley's injuries, and Plaintiff's injuries.

237.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

### FOR A NINTH CAUSE OF ACTION
(*Joint Enterprise as to the Amazon Defendants Carcast Express, and Primex*)

238.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

239.    At all times material to this action, Defendants Amazon.com, Amazon Services, Amazon Logistics, Carcast Express, Primex acted as members of a joint enterprise for profit while delivering Amazon's purchased products to end customers. The joint enterprise necessarily required the transportation of goods in interstate commerce, including using the roads and highways of South Carolina.

240.    The joint enterprise included the delivery of the Subject Load on or about January 5, 2022, using Carcast Express and Primex to move the goods in commerce on the roads and

highways of South Carolina in exchange for profit that resulted in the Subject Collision, all for the benefit of the Amazon Defendants and within the scope of the joint enterprise.

241.    In pursuing the joint enterprise, the Amazon Defendants, Carcast Express and Primex expressly or impliedly agreed to share a common purpose to be accomplished by them and combined their resources or efforts or both, to undertake the joint enterprise, including but not limited to the contribution of financial resources, online platforms, logistics, goods for sale and delivery, services, intellectual property, equipment, hardware, applications and software, shared contractors, employees, officers, and directors.

242.    The Amazon Defendants, Carcast Express and Primex had a community of pecuniary interest in the subject matter of the joint enterprise.

243.    Accordingly, the Amazon Defendants, Carcast Express and Primex are each jointly and severally responsible for the negligence of any single member of the joint enterprise, and for acts and/or omissions committed within the scope of the joint enterprise.

244.    The negligence and/or vicarious liability of at least one of the Amazon Defendants, Carcast Express and Primex, described herein, did directly and proximately cause, or contribute to cause, the Subject Collision, Mr. Whaley's injuries and Plaintiff's injuries.

245.    Due to the willful, wanton, reckless, grossly negligent, and negligent acts of the Amazon Defendants, Carcast Express and Primex as set out above, Plaintiff is entitled to recover actual and punitive damages, jointly and severally, as determined by a jury.

### FOR A TENTH CAUSE OF ACTION
**(Loss of Consortium)**

246.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein verbatim.

247.    At all times relevant hereto, Plaintiff was the spouse of Mr. Whaley.

248.    At all times relevant hereto, Plaintiff and Mr. Whaley lived together as husband and wife raising three (3) children together.

249.    At all times relevant hereto, the Amazon Defendants, Carcast, and Primex controlled, monitored, and supervised the actions of Defendant Yahia in his operation of commercial motor vehicles on behalf of the Amazon Defendants.

250.    At all times relevant hereto, Defendant Yahia was operating the commercial motor vehicle involved in the collision on January 5, 2022.

251.    At all times relevant hereto, the Amazon Defendants, Carcast and Primex were responsible for their own actions and inactions, as well as the actions and inactions of Defendant Yahia on or about January 5, 2022.

252.    As a direct, foreseeable, and proximate result of the negligent, grossly negligent, reckless, willful, and wanton acts and omissions of Yahia, Carcast Express, Primex, and the Amazon Defendants as set out above, Mr. Whaley suffered injuries, which have caused, and in the future will cause, him pain, suffering, mental anguish, emotional distress, permanent impairment, increased susceptibility to future injury, loss of enjoyment of life, lost wages, and other damages and Plaintiff suffered injuries, which have caused, and in the future will cause her the deprivation of the care, comfort, society, services and marital consortium of a kind and loving husband and father, and has suffered a loss of love, affection, solace, moral support and of physical assistance in the operation and maintenance of the home.

253.    Defendants' actions were reckless and represented a willful and conscious disregard for the safety of Plaintiffs husband, Mr. Whaley.

254.    As such, Plaintiff is informed and believes she is entitled to recover both actual and punitive damages from the Defendants in an amount to be determined by a trier of fact pursuant to S.C. Code Ann. § 15-75-20.

255.     As a result of the Amazon Defendants' continued unwillingness to evaluate Mr. Whaley's or her claim and refusal to negotiate or make any meaningful offer, Plaintiff reluctantly brings this action, due to necessity, to comply with the applicable statute of limitations and respectfully requests that it not be used in any way to create additional delay in the case brought by her husband, which has now been pending for more than fourteen (14) months and is set for the trial term beginning on February 3, 2025.

256.     Plaintiff demands a jury trial.

WHEREFORE, Plaintiff prays for the following:

i.     For a jury trial and judgment against Defendants jointly and severally for actual and punitive damages in an amount to be determined by the jury;

ii.     For the costs of this action;

iii.     For this action not to create any additional delay in the case brought by her husband, Mr. Whaley; and

iv.     For such other and further relief as this court deems just and proper.

*SIGNATURE PAGE TO FOLLOW*

**PIERCE SLOAN KENNEDY & EARLY LLC**
321 East Bay Street
Post Office Box 22437
Charleston, SC 29401
(843) 722-7733

_s/ Allan P. Sloan III_____
Allan P. Sloan, III (Fed. ID 6268)
J. Morgan Forrester (Fed. ID 12129)
Richard R. Gergel (Fed. ID 13170)
Edward J. McAlpine, III (Fed. ID 13532)
Breyton J. Briggs (Fed. ID. 14221)
chipsloan@piercesloan.com
morganforrester@piercesloan.com
richardgergel@piercesloan.com
treymcalpine@piercesloan.com
breytonbriggs@piercesloan.com

AND

Sandra J. Senn (Fed. ID 5761)
Senn Legal, LLC
3 Wesley Drive
Charleston, SC 29407
Phone: 843-556-4045
Sandy@sennlegal.com

_Attorneys for Plaintiff_

December 18, 2024
Charleston, South Carolina